UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BERNEST S. MONTGOMERY,

                Petitioner,

v.                           Case No. 3:11-cv-814-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS AND
THE ATTORNEY GENERAL OF
THE STATE OF FLORIDA,

                Respondents.

_____

## ORDER

### I. Status

      Petitioner Bernest S. Montgomery, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition) (Doc. 1) under 28 U.S.C. § 2254 on August 15, 2011. In this action, Montgomery challenges a 2007 state court (Duval County, Florida) judgment of conviction for first degree murder, armed robbery and first degree arson. Respondents submitted a memorandum in opposition to the Petition on October 17, 2012. See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. 16) with exhibits (Resp. Ex.). On December 9, 2011, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 7), admonishing Montgomery regarding his obligations and giving Montgomery a time frame in which to submit

a reply. Montgomery submitted a reply brief on February 11, 2013. See Reply/Traverse to State's Answer (Doc. 20). This case is ripe for review.

## II. Procedural History

On October 6, 2005, the State of Florida charged Montgomery with first degree murder (count one), armed robbery (count two), and first degree arson (count three). Resp. Ex. C at 13-15, Indictment. Montgomery proceeded to trial in July 2007, the conclusion of which a jury found him guilty of first degree murder, armed robbery and first degree arson. Resp. Ex. D, Transcript of the Jury Trial (Tr.) at 795-96; Resp. Ex. C at 112-17, Verdicts. On August 16, 2007, the court sentenced Montgomery to a term of life imprisonment for count one, a term of life imprisonment for count two, to run concurrently with count one, and a term of thirty years imprisonment (with a mandatory minimum of twenty-five years of imprisonment) for count three, to run consecutively to count one. Resp. Ex. C at 153-60, Judgment.

With the benefit of counsel, Montgomery appealed, arguing that the trial court erred by: denying Montgomery's motions for judgment of acquittal on the charge of premeditation (ground one); failing to instruct the jury on the defense of afterthought with respect to robbery as a separate charge and as an underlying felony for felony murder (ground two); and erroneously instructing the jury on burglary as an underlying felony to the charge of first degree

2

murder (ground three). Resp. Ex. H. The State filed an Answer Brief. <u>See</u> Resp. Ex. I. On March 9, 2009, the appellate court affirmed Montgomery's conviction and sentence per curiam without issuing a written opinion, <u>see</u> <u>Montgomery v. State</u>, 4 So.3d 1226 (Fla. 1st DCA 2009); Resp. Ex. J, and the mandate issued on March 25, 2009,[1] <u>see</u> Resp. Ex. K. Montgomery did not seek review in the United States Supreme Court.

On August 14, 2009, Montgomery filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). Resp. Ex. M at 1-23. In his request for post conviction relief, Montgomery asserted that defense counsel was ineffective because he failed to: properly impeach the testimony of Shavonya Williams, a State witness (ground one); object to the prosecution presenting evidence not introduced into evidence, misrepresenting the defense's position, and placing the jury in a position of an expert witness (ground two); prepare a proper defense to support Montgomery's theory of accidental shooting when the victim tried to take back the gun while Montgomery was trying to un-cock it (ground three); object to the prosecution misrepresenting testimony in evidence (relating to the time between when Ms. Williams heard a yell and the gunshot) during closing arguments (ground four); object to the prosecution

---

[1] <u>See</u> http://www.1dca.org, <u>Bernest Montgomery v. State of Florida</u>, Case No. 1D07-4825.

3

misrepresenting statements in evidence during closing arguments (ground five); object to the prosecution misrepresenting the testimony of the medical examiner and confusing the jury (ground six); object to the prosecutor's statement that unfairly bolstered law enforcement (ground seven); object to: (a) improper jury instructions for first degree arson for not defining a required element, specifically the word dwelling, and (b) the finding determination on the verdict sheet (ground eight); investigate Ms. Sharon for impeachment purposes (ground nine); and object to the State presenting inconsistent positions during closing arguments (ground ten). As ground eleven, he asserted that counsel's cumulative errors and omissions constitute ineffective assistance. The State responded. Id. at 32-63.

On June 15, 2010, the trial court denied the Rule 3.850 motion "for the reasons set forth in the State's Response." Id. at 64-97. On appeal, Montgomery filed a pro se brief, see Resp. Ex. N, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. O. On September 24, 2010, the appellate court affirmed the trial court's denial per curiam, see Montgomery v. State, 48 So.3d 57 (Fla. 1st DCA 2010); Resp. Ex. P, and later denied Montgomery's motion for rehearing on November 8, 2010, see Resp. Exs. Q; R. The mandate issued on November 24, 2010. See Resp. Ex. S.

On March 2, 2011, Montgomery filed a pro se petition for writ of habeas corpus. He asserted that appellate counsel was ineffective because he failed to exhaust all state remedies "by federalizing the issues raised" and failing to present the issues "in federal constitutional terms." Resp. Ex. U at 3. On March 28, 2011, the appellate court denied the petition per curiam on the merits, see Resp. Ex. V; Montgomery v. State, 61 So.3d 1140 (Fla. 1st DCA 2011), and later denied Montgomery's motion for rehearing on May 19, 2011, see Resp. Exs. W; X.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development,"

5

Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Montgomery's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

6

As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed <u>de novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an

> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[2]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Montgomery's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v.

---

[2] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

<u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id</u>., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>., at 687, 104 S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted). "Surmounting <u>Strickland</u>'s high bar is never an easy

task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[3], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933.  And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see</u> <u>also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to

---

[3] <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009).

a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision.").

### VII. Findings of Fact and Conclusions of Law

#### A. Ground One

As ground one, Montgomery asserts that counsel (Lewis H.
Buzzell III) was ineffective because he failed to properly impeach
the testimony of Shavonya Williams, a State witness. Montgomery
raised the ineffectiveness claim in his Rule 3.850 motion. Resp.
Ex. M at 5-7. In responding to Montgomery's claim in state court,
the State argued:

> Witness Shavonya Williams, aka "Rose," readily
> admitted making [a] conflicting statement on
> cross examination by Defense counsel. See
> following colloquy:
>
> > Q. Isn't it true that what you heard
> > Mr. Sam [(the victim)] say is
> > ["]Don't point that gun like
> > that["]?
> >
> > A. Like that [or] at me.
> >
> > Q. Which one is it?
> >
> > A. At me.
> >
> > Q. So you deny now that he said,
> > "Don't' point that gun like that"?
> >
> > A. No, sir, I'm not denying that.
> >
> > Q. In fact, that's what he said,
> > isn't it?
> >
> > A. No, sir, he said, "Don't point
> > that gun at me."

11

Q. Well, [do] you recall [when] on
August [the] 30th of 2005 you were
interviewed by Detective Stucki and
Detective Romano at the Police
Memorial Building, two homicide
detectives of the Jacksonville
Sheriff's Office, you remember that?

A. Yes, sir?

Q. And isn't it correct that August
the 30th of 2005 you told those two
detectives you heard the victim say,
"Don't point that gun like that,"
and you did not tell them that he
said, "Don't point that gun at me"?

A. Okay, no[,] don't point that gun
like that [sic] -- at me.[4]

Q. Which is it, ma'am?

A. Don't point that gun at me.

(T 377-378)

It is clear from the transcript that far
from stumbling into the subject, Mr. Buzzell
actually raises the subject. The Defendant
claims that Mr. Buzzell, who by the way has a
very lengthy career in criminal trial
practice, failed to impeach the witness on
this point. It is also clear from the
transcript . . . that the witness does not
deny making a different statement in the
interview. Therefore to attempt to impeach the
witness on that point would have been
improper. Defense counsel was not surprised by
the two different statements and was fully
prepared to address them. The different
statements were clearly brought out in the
record. Though, in reality there is really no
actual conflict between the two statements;
one simply modifies or amplifies the other.

---

[4] See Tr. at 378.

"Don't point that gun like that" versus
"Don't point that gun at me like that."

Though the State does not concede error
on the part of trial counsel as to this point,
if any error was to be found it would clearly
be harmless, as it would not have made a
difference in the outcome of the trial.

It should also be noted that trial
counsel addressed the quote from the sworn
statement again with lead detective Stucki as
follows:

Q. Rose Williams told you that when
she was back in that back bedroom
after the third time Mr. Montgomery
had come back there to talk to her
that a sho[r]t time later she heard
the victim say, and I quote, "Don't
point that gun like that,["] end
quote?

A. That's correct.

(T 596)

Defendant's motion concedes that defense
counsel literally hammered this very point no
less than three separate occasions in his
clos[ing statement] ..., which unequivocally
demonstrates that trial counsel pressed this
point about as far and as eloquently as any
could[.]

. . .

It is the State's position that Mr.
Buzzell's actions in this manner were clearly
above what is to be reasonably expected of
defense counsel, and therefore the Defendant
is not entitled to an evidentiary hearing on
this matter.

Id. at 33-35. The trial court denied Montgomery's Rule 3.850 motion

as to this issue "for the reasons set forth in the State's

Response." Id. at 64. On appeal, Montgomery filed a pro se brief, see Resp. Ex. N, and the appellate court affirmed the trial court's denial per curiam, see Montgomery, 48 So.3d 57, and later denied Montgomery's motion for rehearing, see Resp. Exs. Q; R.

Given the record in the instant action, the appellate court may have affirmed the denial of Montgomery's motion for post conviction relief on the merits. If the appellate court addressed the merits, Montgomery would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Montgomery's claim is still without merit. The trial court's conclusion is fully supported by the record. In evaluating the performance prong of the Strickland ineffectiveness inquiry,

14

there is a strong presumption in favor of competence. See <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Mr. Buzzell is an experienced criminal defense attorney.[5] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Montgomery must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th

---

[5] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000); <u>see</u> <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). Lewis H. Buzzell III was admitted to the Florida Bar in 1977. <u>See</u> http://www.floridabar.org. Thus, at the time of Montgomery's trial in 2007, Buzzell had been practicing law for almost thirty years. Assistant State Attorney Mose L. Floyd, the prosecutor, noted that Mr. Buzzell "has a very lengthy career in criminal trial practice." Resp. Ex. M at 34.

Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted). Montgomery failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance.

Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Montgomery has not shown prejudice. Indeed, the Court notes that the State had substantial evidence against Montgomery, and he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had impeached Ms. Williams as to her statements about Montgomery pointing the gun. Montgomery's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. See Response at 8-10; Tr. at 377-78, 596, 678-79.

## **B. Ground Two**

As ground two, Montgomery asserts that counsel was ineffective because he failed to object to the prosecutor's statements in closing arguments that Montgomery contends were evidence about the use of a revolver. <u>See</u> Petition at 7; Tr. at 723, 740-41. Montgomery raised the ineffectiveness claim in his Rule 3.850 motion. Resp. Ex. M at 7-8. In responding to Montgomery's claim in state court, the State argued:

> The Defendant claims that the State is trying to place juror(s) in the position of experts by pulling statements in closing argument out of context. The State is allowed to argue all the facts in the case and any reasonable inference that can be drawn from them. The State's comment on this matter is not just limited to the statement cited, only in part, by the Defendant. Taken in context there was no reason for trial counsel to raise an objection.

> First, the State argued as follows:

> "The Defendant is trying to un-cock the gun. At least one of you is a competitive gun shooter, what does having your finger on the trigger having to do with uncocking the gun when it is pointed at somebody? If you're going to do that you don't point the gun at somebody[.]"

> (T 723)

> The point here is that: whether you have to put your finger on the trigger to un-cock the gun or not, common sense tells even the novice that you don't point the gun at another person while attempting such as [sic] dangerous procedure. That point is not objectionable. However, if an objection were

17

made and sustained, any resultant prejudice would be deemed harmless in light of all the other evidence of the Defendant's guilt.

Secondly, the State argued as follows:

"These are things the Defense might talk about when they argued. 'The Defendant cocked the trigger by accident,' those of you familiar with firearms know you don't do that by accident, that is a safety device on a revolver. It is difficult to do by accident. That was an intentional act that speaks to premeditation; cock the trigger because you mean business. You're not giving the pistol back to the owner, you mean business."

(T 740-741)

The Defendant claims that no one specifically testified as to how a revolver is un-cocked. But that does not preclude the State from arguing reasonable inferences from the evidence that is put before the Jury.

Detective Stucki testified as follows:

Q. [A]nd do revolvers normally come with any safety on them?

A. No. Normally the hammer on the revolver acts as the safety device, the safety precaution, there's not a safety on it.

Q. Is [sic] there two different ways to get a hammer back on a revolver?

A. Yes.

Q. Would you explain it to the jury?

18

A. One[,] you can cock it back with your thumb, two, goes back when you pull the trigger.

Q. If you pull the trigger on the revolver and the hammer is forward, does that take a lot more pressure or less pressure than if the hammer is already to the back?

A. Takes more pressure to completely cycle through.

Q. On a revolver[,] does the hammer, the cocking, serve as some sort of a safety device on a revolver?

A. Yes.

Q. Now, once a revolver is fired and a hammer goes forward, how does that revolver get a round and (to) go out the barrel?

(T 555-556)

A. When the hammer comes back basically the [...] hammer comes back, hammer collapses, the hammer strikes the firing pen which in turn strikes the primer. That's on the back of the cartridge that's in the gun. That causes an explosion, that propellant inside the cartridge is ignited, causes an explosion and the gases eject the actual projectile of the bullet on the end of the cartridge through the bore o[r] the barrel of the gun and out the end of the gun in the direction that the gun is pointed.

[Tr. at 556.]

19

> The State has a right to argue the facts
> and all reasonable inference that can be drawn
> there from [sic]. In Davis v. State, 698 So.2d
> 1182 Fla., 1997, Davis argued that the
> prosecutor improperly referred to certain
> statements in Davis's taped confessions as
> "bald-faced lies," particularly where the
> State was responsible for admitting those
> tapes into evidence. The Court found that the
> comments did not cross the line into improper
> argument. When it is understood from the
> context of the argument that the charge is
> made with reference to the evidence, the
> prosecutor is merely submitting to the jury a
> conclusion that he or she is arguing can be
> drawn from the evidence. Craig v. State, 510
> So.2d 857 (Fla., 1987). It was for the jury to
> decide what conclusion to draw from the
> evidence and the prosecutor was merely
> submitting his view of the evidence to them
> for consideration.

Id. at 36-37. The post-conviction court denied Montgomery's Rule 3.850 motion as to this issue based on the State's arguments. The appellate court affirmed the trial court's denial per curiam and also denied Montgomery's motion for rehearing.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and

were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Montgomery is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Montgomery's ineffectiveness claim, nevertheless, is simply without merit. The trial court's conclusion is fully supported by the record. Counsel's performance was within the wide range of professionally competent assistance. Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 252, 621; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions").

Assuming arguendo deficient performance by defense counsel, Montgomery has not shown prejudice. He has failed to show that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the prosecutor's comments in closing argument. Therefore, Montgomery's

ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[6]

### C. Ground Three

As ground three, Montgomery asserts that counsel was ineffective because he failed to prepare a proper defense to support Montgomery's theory of an accidental shooting (alleging that the victim tried to take back the gun while Montgomery was trying to un-cock it). Montgomery raised this ineffectiveness claim in his Rule 3.850 motion. Resp. Ex. M at 9-10. In responding to Montgomery's claim in state court, the State argued:

---

[6] See Purvis v. Crosby, 451 F.3d 734, 737 (11th Cir. 2006) (stating that, where petitioner claims counsel should have objected, "we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."). The Court noted that its decision in Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310 (11th Cir. 2003) (per curiam), "is not to the contrary." Purvis, 451 F.3d at 737.

> [In Davis, 341 F.3d 1310] trial counsel objected during voir dire to the Batson error that was being committed but when his objection was rejected, counsel failed to take the next step of renewing that objection after the conclusion of voir dire; in the Florida courts that is a necessary step before the issue may be reviewed on appeal. Id. at 1312. This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in Davis, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal. Id. at 1315-16.

Id.

This argument is a bit disingenuous on the part of the Defendant. Trial counsel can only argue the facts as they are presented at trial. The case that the Defendant wishes to present can come from only two sources; the Defendant himself and Rose, the only other person present in the home at the time the victim was killed. In fact the only two people present in the room at the time the victim was shot was the deceased victim and the Defendant. Since the Defendant did not testify at trial, he is left with Rose's testimony, which could not be re-characterized to support an accident defense. Rose testified as listed below. Rose's testimony showed premeditation to take the victim's gun. Rose over heard [sic] the victim tell the Defendant not to point the gun in a dangerous manner, arguably at the victim. Then, when Rose asked the Defendant if he shot the victim, the Defendant responded in the affirmative.

> 1) Ms. Williams testifies that she saw a gun in the victim's pants and Defendant got really excited and repeatedly asked to see it. (T 349)

> 2) Defendant continued to ask for the revolver and the victim took out all of the bullets and then gave the revolver to Defendant. (T 350)

> 3) At the kitchen table, Defendant returned the revolver to the victim and [the victim] put the bullets back in. (T 351 )

> 4) Defendant, the victim and Ms. Williams moved into the living room and continued to smoke crack cocaine. (T 351)

> 5) Ms. Williams then went into the back bedroom to lay down, and she testified that Defendant came back to the bedroom to visit her two or three times. (T 352)

6) Ms. Williams testified that the last time Defendant came to see her in the back bedroom, he brought her shoes and told her to get dressed because they were leaving. (T 352)

7) Ms. Williams testified that Defendant told her that he was is [sic] getting ready to take the "Cracker's" gun. (T 353)

8) Ms. Williams tells Defendant not to do it because they don't need anymore [sic] trouble. (T 353)

9) Ms. Williams testified that Defendant shuts the door, and while she is putting on her clothes and straightening up the bedroom, she hears the victim, "No, Little B, don't point that gun at me." (T 354)

10) Soon after hearing the victim's voice, she hears "a pow noise," and she thought it was a gunshot. (T 355)

11) Ms. Williams testifies that Defendant was yelling at her to leave, and when she came out of the bedroom, she said Defendant [was] wiping the doorknob with his shirt in one hand and what appeared to be the victim's gun in the other hand. (T 355-356)

12) As they were leaving the house, Ms. Williams [asked] Defendant if he shot Sam (Mark Pope), and Defendant said that he shot him. (T 357)

Further the Defendant on his video taped statement makes it very difficult for trial counsel to change Defendant's own admission to pulling the trigger intentionally in support of an accident defense. This is especially true in light of the fact that the Defendant

decided not to testify at trial, see
Defendant's statement below:

> DETECTIVE STUCKI: When you had that
> gun and you was [sic] trying to un-
> cock it and he tried to get it back
> from you, did you just shoot him?
>
> DEFENDANT: Naw, I didn't try to
> shoot him. I didn't try to, I didn't
> try to[;] my hand was on the trigger
> but it [sic] I could sit here and I
> could tell you it slipped but I
> don't think my hand slipped. I could
> sit her[e] and tell you it slipped.
> I ain't gonna tell you it slipped.
>
> DETECTIVE STUCKI: You just pulled
> the trigger?
>
> DEFENDANT: That's true. (DS 18)[7]

Defense counsel argued in his opening that
this was an accident and then led off with
this point in the first paragraph of his
closing argument, as follows:

> "Counsel. Good afternoon[.] As we
> told you yesterday or excuse me,
> actually it was two days ago, as the
> evidence now clearly shows this is a
> case about a tragic accident that
> was fueled by crack cocaine. It was
> an accidental shooting, there was no
> armed robbery."
>
> (T 677)

In responding to Defendant['s] First
Ground for relief, [t]he State has already
pointed out how trial counsel artfully took
Rose's Statement that the victim warned the
Defendant not to point that gun at the victim
that way, and re-characterized it to support

---

[7] Resp. Ex. E at 22.

the Defendant's accident theory; stated in part as follows:

> "... And you have to say to yourself why is it important in this case? It's important because it focuses on exactly the main issue and the distinguishing issue in this case which is[:] was this an intentional homicide or an accident? "Don't point that gun like that" is something (someone) telling somebody to quit being careless or you'll have an accident. Don't point that gun at me, as the State suggests which is why they're beating it to death up here this afternoon, means don't shoot me."

(T 678-679)[8]

Defendant claims that he was never informed of any strategy which included not putting on a defense and not using an expert witness to dispute the State's theory when the only testimony against accidental shooting is a single statement allegedly made by Defendant to Williams. The Defendant in making such a claim completely discounts his o[w]n statement cited above from (DS 18)[9] where he himself dispels the notion that the shooting was an accident, when he states that he pulled the trigger in order to shoot the victim. The Defendant was unequivocal that his finger did not slip. Furthermore, when trial counsel announced that they would not be putting on a defense, the Defendant had all night and the next morning to reconsider that decision. (See pertinent testimony provided below.) Yet, when trial resumed the next day at 1:30, the trial record is silent as to any objections, protestations or wavering on the part of the Defendant on this matter. According to the

---

[8] Tr. at 679.

[9] Resp. Ex. E at 22.

Coleman v State, 718 So.2d 827 (Fla. 4th DCA
1998), it would be improper for the Court to
now go back and second guess that decision.
Mr. Buzzell's tactical decision in this matter
should not be second guessed at this point,
see Buford v State, 402 So.2d. 365 (Fla.
1986). Trial tactics used for strategy are to
be left alone unless performance is outside
the range of reasonably competent [c]ounsel,
see Stevens v. State, 552 So.2d. 1082. Based
upon the facts in this case, the lack of
witnesses or facts from which to base an
accident defense, and especially in light of
Defendant's admissions in his interview with
the Homicide Detectives, it is clear that the
decision not to put on a case falls well
within the range of reasonably competent
counsel. Therefore, the Defendant is not
entitled to an evidentiary hearing on this
matter.

    THE COURT: Is the [d]efense going to
    present a case?

    DEFENSE TRIAL COUNSEL: No[.]

    THE COURT: It's 4:30. Do ya'll want
    to try or argue tonight or want to
    argue tomorrow? I don't plan on
    making them stay and deliberate
    tonight before you answer that
    question.

    DEFENSE TRIAL COUNSEL: I'd rather
    come back [and argue] tomorrow then.

    (T 608)

    THE COURT: (To the Jury) ... What
    I'd like you to do then is go home,
    get a good night's sleep. I have a
    big calendar tomorrow so I won't be
    able to do it in the morning, going
    to have to be in the afternoon, go
    ahead and eat your lunch before you
    come in and come back at 1:30.

    (T 612)

27

> Trial counsel was clearly within the wide range of reasonable competence in his effort to neutralize if not change very damaging facts to support his argument for accidental shooting. The Defendant has merely made a conclusory argument that trial counsel did not do enough to establish an accident defense. But, Defendant fails to show how such a defense could be put forward beyond those actions actually taken by trial counsel. Having failed to establish a basis for the claimed deficient performance on this ground, the Defendant is not entitled to an evidentiary hearing on this matter.

Id. at 38-41. The post-conviction court denied Montgomery's Rule 3.850 motion as to this claim based on the above-stated reasons argued by the State. The appellate court affirmed the trial court's denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Montgomery's motion for post conviction relief on the merits. If the appellate court addressed the merits, Montgomery would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Montgomery's claim is still without merit. The trial court's conclusion is fully supported by the record. Counsel's performance was well within the wide range of professionally competent assistance since he presented an accidental shooting theory, but was limited in his presentation of that defense due to Montgomery's statements. Therefore, Montgomery's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. See Response at 13-14.

### D. Ground Four

As ground four, Montgomery asserts that counsel was ineffective because he failed to object when the prosecutor, in closing argument, misrepresented Ms. Williams' testimony as to the time span between the victim's yell and the gunshot. Montgomery raised this ineffectiveness claim in his Rule 3.850 motion in state court, see Resp. Ex. M at 10-11, and the State addressed the claim as follows:

> The Defendant alleges that Rose's testimony at trial established a two minute delay between the victim yelling words to the effect of don't point that gun at me and the fatal gun shot. The Defendant claims that the State misinterpreted that testimony to fit the State's theory of the case. The Defendant claims that the State mislead the jury by arguing as follows:

"So if you look at it when you consider everything else that happened before he pulled the trigger back, before he pulled that hammer back and you consider it with everything that followed it is clear he made it up in his mind he was going to get that gun. The victim said no, so he pulls the hammer of the gun back. The victim pled, [']Do not point the gun at me like that,['] and he pulled the trigger forward."

(T 644)[10]

The listed argument by the State does not directly contradict the single statement made by Rose citing some passage of time and up to two minutes between the yelled statement from the victim and the sound of what she assumed to be a gun shot. The State is merely arguing inferences based upon all that the [j]ury has heard and not just one statement made by Rose. This is clearly permissible, therefore no objection was warranted. Consequently, the [d]efense has failed to state a claim which entitles the Defendant to an evidentiary hearing on this matter.

Id. at 41. The post-conviction court denied Montgomery's Rule 3.850 motion with respect to this ineffectiveness claim based on the State's argument, and the appellate court affirmed the trial court's denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Montgomery's motion for post conviction relief on the merits. If the appellate court addressed

---

[10] Tr. at 643-44.

the merits, Montgomery would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Montgomery's claim is still without merit.  The trial court's conclusion is fully supported by the record. First, the prosecutor's closing argument did not contradict Ms. Williams' testimony that there was some passage of time and up to two minutes between when she heard the victim yell and when she heard a gunshot. Counsel's decision not to object was well within the wide range of professionally competent assistance. As previously stated, attorneys are permitted wide latitude in their closing arguments. As the record reflects, the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 252, 621.

Additionally, the trial judge instructed the jurors that they may rely upon their own conclusion about a witness: "A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness." Id. at 774; Brown, 255 F.3d at 1280 (stating "jurors are presumed to follow the court's instructions"). Moreover, Montgomery has failed to show that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the prosecutor's closing argument. Therefore, Montgomery's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice

### E. Ground Five

As ground five, Montgomery asserts that counsel was ineffective because he failed to object when the prosecutor argued the State's position on the discrepancy in Ms. Williams' testimony and her prior statements. Montgomery raised this claim in his Rule 3.850 motion, see Resp. Ex. M at 11-12, and the State argued as follows:

> This matter was previously addressed in the grounds for Defendant's claim number [o]ne. The very same quotes from (T 377-378)[11] were addressed in the State's response to Defendant's Ground One. The very point that Defendant wishes to make: that there is a distinction between the two versions of the statement that carry a weighable importance, was made very eloquently by trial counsel in

---

[11] See Tr. at 377-78.

32

closing argument.[12] Where on the one hand the
Defendant previously acknowledges that the
witness Rose made apparently conflicting
statements on this point, the Defendant now
complains that the State chose to argue one or
a combination of these conflicting statements.
As stated earlier, the State is allowed to
argue all reasonable inferences from the facts
and evidence presented at trial. There is
nothing unreasonable about the State arguing
for one version of a statement admitted into
evidence over another version of the same
statement. There is nothing objectionable
about the State arguing facts in closing
argument. The Defendant has failed to
establish a claim of ineffective assistance of
counsel or point out any harm that resulted
from a failure to object to this point.
Therefore, the Defendant is not entitled to an
evidentiary hearing on this matter.

Id. at 42. The court denied Montgomery's Rule 3.850 motion as to

this claim based on the State's reasoning, and the appellate court

affirmed the trial court's denial per curiam.

Assuming the appellate court affirmed the denial on the

merits, Montgomery would not be entitled to relief because the

state courts' adjudications of this claim are entitled to deference

under AEDPA. After a review of the record and the applicable law,

the Court concludes that the state courts' adjudications of this

claim were not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal

law, and were not based on an unreasonable determination of the

facts in light of the evidence presented in the state court

---

[12] See Tr. at 678-79, 699, 705.

proceedings.  Thus, Montgomery is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Montgomery's ineffectiveness claim, nevertheless, is without merit. The trial court's conclusion is fully supported by the record. Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance.  Even assuming arguendo deficient performance by defense counsel, Montgomery has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the prosecutor's closing argument. Montgomery's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. <u>See</u> Response at 16-17; Tr. at 678-79, 699, 705.

### F. Ground Six

As ground six, Montgomery asserts that counsel was ineffective because he failed to object when the prosecutor, in closing argument, misrepresented the medical examiner's testimony. Montgomery raised this claim in his Rule 3.850 motion, <u>see</u> Resp. Ex. M at 13-14, and the State addressed it as follows:

> According to the Defendant, the Medical Examiner offered a position that the victim could be bent over going for the gun which was consistent with the Defendant's claim of accidental shooting. The Defendant complains that the State confused the jury into making

them think that the Medical Examiner testified
to the exact opposite. This despite the fact
that the Defendant's own reference to the
transcript tells a different story. Far from
confusing the jury as to what the Medical
Examiner testified, the State actually took
issue with the Medical Examiner['] conclusion
when combined with additional facts brought
out at trial, specifically facts contained in
the Defendant's interview.

    In closing argument, the State argued
that: The victim is a little taller than this
Defendant; by about two or three inches. In
his interview video, this Defendant never
states that the victim was leaning over when
shot. What the Defendant actually states is
that the victim was coming toward him and he
had the gun down here (chest to stomach
level). And, that is when the Defendant shoots
the victim. Pertinent portions of the State's
argument are provided as follows:

    "Mr.      Morcom      [(the      other
    prosecutor)], try to slap the gun
    out of my hand (demonstration). And
    the Medical Examiner tells you the
    round is downward through the neck.
    How in the world do you get that
    trajectory from this point? It is
    physically impossible. And if the
    victim leans forward, where is the
    round going to go? Through the top
    of the head, ladies and gentlemen,
    it is totally inconsistent.

    Defense counsel told you that [the]
    Medical Examiner's testimony would
    support their claim. It does the
    exact opposite. It turns that on its
    head, ladies and gentlemen. There's
    one photograph here shows an uneaten
    hot dog on the table. There's one
    seat there where Mark Pope was
    sitting. I suggest to you totally
    consistent with the shot while the
    man is sitting. Down ward [sic] into
    the body. That's what's consistent

35

with the physical evidence in this
case. "[D]on't point that gun. I've
got it cocked." Trigger is pulled.
Downward trajectory into the neck.
Totally consistent with the facts in
this case.

What you just heard argued from the
defense is not even consistent with
what the Defendant said in the
interview.[13] He didn't say the
victim was leaning down, he said
that he was coming at me and he
slapped the gun. You don't get a
downward trajectory. Laws of physics
are not suspended by Little B, they
work for him as they do for us all."

(T 745-746)

The Defendant's video interview contain[s] the
following    exchange    with    the    Homicide
Detective:

Bernest Montgomery: No he didn't try
to harm me but he tried to get it
and I was trying to uncock it, I was
trying to uncock it, I kept trying
to uncock it he said you got to hold
the thing pull the thing and let me
see it. I said no man I got it, I
got it, I got it, I got it
(inaudible). **He said let me see it,
I said no I got it while he was
coming towards me (slap). He grabbed
my arm and my hand was still on the
trigger and [it] was facing toward
him.**

Detective Stuckey: Ok did the gun go
off? What[,] is that a yes? I need
you to speak up.

---

[13] <u>See</u> Tr. at 689-90.

> Bernest Montgomery: Yes
>
> (DS 11)[14]
>
> As stated in response to other grounds,
> [t]he State is allowed to argue reasonable
> inferences from the evidence in the case. The
> State never argued that the Medical Examiner
> testified in any way different from the
> testimony she gave from the stand. There was
> no legal basis for the [d]efense to object to
> the State's closing argument in this matter.
> Therefore, the Defendant is not entitled to an
> evidentiary hearing on this matter.

Id. at 42-43 (emphasis added). The court denied Montgomery's Rule 3.850 motion as to this claim based on the State's above-quoted reasons, and the appellate court affirmed the trial court's denial per curiam.

Given the record, the appellate court may have affirmed the denial of Montgomery's motion for post conviction relief on the merits. If the appellate court addressed the merits, Montgomery would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in

---

[14] Resp. Ex. E at 15.

the state court proceedings. Thus, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Montgomery's claim is still without merit. The trial court's conclusion is fully supported by the record. Viewing the evidence and closing arguments as a whole, counsel's performance was well within the wide range of professionally competent assistance. The prosecutor's argument was not improper, and thus, counsel need not have objected. Even assuming deficient performance by defense counsel, Montgomery has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the prosecutor's argument. Montgomery's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. See Response at 17-19; Tr. at 482, 492-93, 745-46; Resp Ex. E at 15.

## G. Ground Seven

As ground seven, Montgomery asserts that counsel was ineffective because he failed to object when the prosecutor bolstered the statements of law enforcement. Montgomery raised this claim in his Rule 3.850 motion, see Resp. Ex. M at 14-15, and the State responded as follows:

The State, in arguing that it did not have the
luxury of picking its' [sic] witnesses[,]
stated the following:

> "The Defendant chose who would be
> his victim that night, Mark Pope,
> who he smoked cocaine with. This
> Defendant chose who this witness
> would be that night when he brought
> Rose Williams, a known prostitute
> and drug user, to Mark Pope's Home.
>
> **It would have been nice -- if the
> Defendant had picked up a police
> officer or priest or pastor and
> brought him to this home, but he
> didn't."**

(T 728)

These statements were in no way designed
to vouch for or bolster the credibility of any
state witness in particular. The State was
simply drawing a contrast between the
witnesses who were called to those witnesses
who might have been called, who arguably would
not have a criminal history or a history of
drug use and indeed under the influence of
drugs at the time the victim was murdered.

These statements in closing argument are
permissible. Therefore, it is totally within
the wide range of reasonable representation
for the trial counsel not to object to this
line of argument either because it is deemed
not objectionable or for the mere fact that
objecting would only draw further attention
[to] the point being made by the State.
Furthermore in light of all the evidence in
this case, not the least of which is the
defendant's video taped admission to
consciously pulling the trigger to shoot the
victim, while the defendant was taking the
victim's gun, would make such any resultant
prejudice harmless. Therefore, the Defendant
is not entitled to an evidentiary hearing as
to this matter.

Id. at 44 (emphasis added). The court denied Montgomery's Rule 3.850 motion as to this claim based on the State's rationale, and the appellate court affirmed the trial court's denial per curiam.

Given the record, the appellate court may have affirmed the denial of Montgomery's motion for post conviction relief on the merits. If the appellate court addressed the merits, Montgomery would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Montgomery's claim is still without merit. The trial court's conclusion is fully supported by the record. Counsel's performance was well within the wide range of professionally competent assistance since the prosecutor's argument was not improper. The prosecutor did not bolster the testimony of any

particular State witness, but instead pointed out that the State
could not control the witnesses that it presented, including their
flaws. Therefore, Montgomery's ineffectiveness claim is without
merit since he has shown neither deficient performance nor
resulting prejudice. <u>See</u> Response at 19-20; Tr. at 728.

### H. Ground Eight

As ground eight, Montgomery asserts that the trial court erred
when it denied his motions for judgment of acquittal because the
evidence was insufficient to establish that the shooting was
premeditated. Montgomery argued this issue on direct appeal, <u>see</u>
Resp. Ex. H at 8-13; the State filed an Answer Brief, <u>see</u> Resp. Ex.
I, and the appellate court affirmed Montgomery's conviction and
sentence per curiam without a written opinion as to this issue, <u>see</u>
<u>Montgomery</u>, 4 So.3d 1226. To the extent that Montgomery is raising,
in ground eight, the same claim he presented on direct appeal, the
claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the
merits, <u>see</u> Resp. Ex. I at 24-41, and therefore, the appellate
court may have affirmed Montgomery's conviction based on the
State's argument. If the appellate court addressed the merits, the
state court's adjudication of this claim is entitled to deference
under AEDPA. After a review of the record and the applicable law,
the Court concludes that the state court's adjudication of this
claim was not contrary to clearly established federal law and did

41

not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[15] Montgomery's claim is still without merit because the State presented ample evidence to support Montgomery's conviction for first degree murder. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this

---

[15] See Response at 20-24.

authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 319.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Montgomery committed the offense of first degree murder. Indeed, the State had substantial evidence against Montgomery. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for first degree murder. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses and Ms. Williams' account of what happened on the day in question and the following morning. Given the record, the trial court did not err in denying Montgomery's motions for judgment of acquittal. <u>See</u> Response at 24-26; Resp. Ex. I at 24-41; Tr. at 598-608, 620. Therefore, Montgomery is not entitled to habeas relief as to ground eight.

### I. Ground Nine

As ground nine, Montgomery asserts that the trial court erred when it failed to instruct the jury on the defense of afterthought with respect to robbery and felony murder. Montgomery argued this issue on direct appeal, <u>see</u> Resp. Ex. H at 14-16; the State filed

an Answer Brief, see Resp. Ex. I, and the appellate court affirmed Montgomery's conviction and sentence per curiam without a written opinion as to this issue. To the extent that Montgomery is raising, in ground nine, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. I at 42-49, and therefore, the appellate court may have affirmed Montgomery's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[16] Montgomery's claim, nevertheless, is simply without merit. The trial judge, prosecutor and defense counsel engaged in a lengthy

---

[16] See Response at 26-27.

discussion concerning the defense's special requested jury instructions on taking property as an afterthought. See Tr. at 504-14. After reading a part of the redacted transcript of Detective Stucki's interview of Montgomery, the trial judge denied the defense's request. See id. at 514. Given the record, the trial judge did not abuse his discretion in denying the defense's requested jury instructions on afterthought. See Response at 32-33; Resp. Ex. I at 48-49. Therefore, Montgomery is not entitled to habeas relief as to ground nine.

## J. Ground Ten

As ground ten, Montgomery asserts that the trial court erred when it erroneously instructed the jury on burglary as an underlying felony to the charge of first degree felony murder. Montgomery argued this issue on direct appeal, see Resp. Ex. H at 17-18; the State filed an Answer Brief, see Resp. Ex. I, and the appellate court affirmed Montgomery's conviction and sentence per curiam without a written opinion as to this issue. To the extent that Montgomery is raising, in ground ten, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. I at 50, and therefore, the appellate court may have affirmed Montgomery's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under

AEDPA. Upon review of the record and the applicable law, the Court concludes that, if the state court rejected Montgomery's claim for the reasons advocated by the State in the Answer Brief, see Resp. Ex. I at 50, the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Montgomery is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue of federal constitutional dimension,[17] Montgomery's claim is still without merit. During a charge conference, the parties addressed the issue. See Tr. at 516-22. The trial judge instructed the jury on burglary as an underlying felony to the charge of first degree murder.

> In order to convict of First Degree Felony Murder it is not necessary for the State to prove that the defendant had a premeditated design or intent to kill.
>
> I'll now define burglary and robbery for you. Burglary, the State must prove the following two elements beyond a reasonable doubt, **number one**, Bernest Montgomery had permission or consent to enter a structure owned by or in the possession of Mark Pope,

---

[17] See Response at 26-27.

>    **number two**, Bernest Montgomery after entering the structure remained therein, **A**, surreptitiously and with the fully formed conscious intent to commit the offense of assault, battery, aggravated assault, aggravated battery, robbery and/or murder, **or B**, after permission to remain had been withdrawn and with the fully formed conscious intent to commit the offense of assault, battery, aggravated assault, aggravated battery, robbery and/or murder, **or C**, with the fully formed conscious intent to commit or attempt to commit the offense of **assault**, **battery**, aggravated assault, aggravated battery, robbery and/or murder.

Id. at 752-53 (emphasis added). After the trial judge read the instructions, Montgomery again objected. See id. at 789.

Florida Statutes section 810.02(1)(b)2. defines burglary as follows:

>    Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>
>    a. Surreptitiously with the intent to commit an offense therein;
>
>    b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
>
>    **c. To commit or attempt to commit a forcible felony, as defined in s.776.08.**[18]

Fla. Stat. § 810.02(1)(b)2. (2003) (emphasis added). Neither assault nor battery is a forcible felony, as defined in Florida Statutes section 776.08. Thus, the portion of the instruction as to

___

[18] Florida Statutes section 776.08 includes murder, robbery, aggravated assault and aggravated battery as forcible felonies.

this basis for a felony murder conviction appears to have been in error. Nevertheless, the jury found Montgomery guilty of: (1) first degree murder (count one), as charged in the Indictment, found that the killing was premeditated, and was done during the commission or attempted commission of a felony (burglary and/or robbery), see Resp. Ex. C at 112, Verdict; (2) robbery (count two), as charged in the Indictment, and found that Montgomery carried a firearm during the commission of the robbery, and that he discharged a firearm which caused great bodily harm or death to another person during the commission of the robbery, id. at 115; and (3) first degree arson (count three), as charged, see id. at 117. See Tr. at 795-96.

Assuming that the trial judge erroneously instructed the jury on burglary as an underlying felony to the charge of first degree felony murder, any constitutional error is harmless. On federal habeas review, harmless error is determined by applying the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).

> On collateral review, we apply the harmless-error standard as articulated in Brecht v. Abrahamson, which dictates that a federal court may grant habeas relief on account of a constitutional error only if it determines that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); see Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1110-12 (11th Cir. 2012) (outlining Brecht analysis on federal habeas review), cert. denied, Trepal v. Crews, -- U.S.--, 133 S.Ct. 1598, 185 L.Ed.2d 592 (2013). Under the Brecht standard, the petitioner should prevail

48

> when the record is "so evenly balanced that a
> conscientious judge is in grave doubt as to
> the harmlessness of an error." O'Neal v.
> McAninch, 513 U.S. 432, 437, 115 S.Ct. 992,
> 995, 130 L.Ed.2d 947 (1995); see Caldwell v.
> Bell, 288 F.3d 838, 842 (6th Cir. 2002) ("When
> faced with a Sandstrom error a court should
> not assume it is harmless but must review the
> entire case under the harmless-error standard
> the Supreme Court most recently expounded in
> Brecht...."). "To show prejudice under Brecht,
> there must be more than a reasonable
> possibility that the error contributed to the
> conviction or sentence." Trepal, 684 F.3d at
> 1114 (internal quotation marks omitted).

Owens v. McLaughlin, 733 F.3d 320, 328 (11th Cir. 2013).

Applying Brecht, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1307 (11th Cir. 2012) (quoting Brecht, 507 U.S. at 637), cert. denied, 133 S.Ct 861 (2013). In assessing the prejudicial impact of the federal constitutional error in a state court criminal proceeding under the "substantial and injurious effect" standard, there must be "more than a reasonable possibility that the error contributed to the conviction or sentence." Mason v. Allen, 605 F.3d 1114, 1123 (11th Cir. 2010) (internal quotation marks and alteration omitted).

Upon review of the record as a whole, this Court concludes that Montgomery has not established that the trial judge's error (assuming for analysis that it was constitutional error) "had a substantial and injurious effect or influence in determining the

49

jury's verdict." Nor has he shown "more than a reasonable possibility that the error contributed" to the conviction. <u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1114 (11th Cir. 2012) ("The question turns on whether the Court can 'say, with fair assurance,' that the verdict 'was not substantially swayed by the error[.]'"), <u>cert</u>. <u>denied</u>, 133 S.Ct 1598 (2013); <u>see</u> <u>Buzia v. State</u>, 82 So.3d 784, 800 (Fla. 2011) ("Moreover, even if the burglary conviction and attendant sentence were reversed, the felony murder conviction would remain valid, and Buzia would not be entitled to a new trial. Buzia was convicted of premeditated and felony murder. The latter conviction would not be invalidated because it rests on the valid felony robbery conviction."); <u>see</u> Response at 34 (quoting <u>Teffeteller v. State</u>, 439 So.2d 840 (Fla. 1983) ("Under the facts of the present case, we believe there is substantial, competent evidence to uphold appellant's conviction under a premeditation theory. That being so, any error in the instructions on the underlying felony of attempted robbery becomes harmless.")). In the instant case, the jury convicted Montgomery of premeditated murder <u>and</u> felony murder with respect to the armed robbery. The jury did not find him guilty of burglary. Under these circumstances, the trial judge's error in instructing the jury on burglary, as an underlying felony to the charge of first degree murder, is harmless. Given the record, Montgomery is not entitled to habeas relief as to ground ten.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Montgomery seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Montgomery "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Montgomery appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of August, 2014.

MARCIA MORALES HOWARD
United States District Judge

sc 7/28
c:
Bernest Montgomery
Ass't Attorney General (Heller)